```
1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
2                          AUSTIN DIVISION

3   UNITED STATES OF AMERICA     )
                                 ) Case Number
4                                ) AU:23-CR-100-DAE
    vs.                          )
5                                )
    NATIN PAUL,                  ) Austin, Texas
6   Defendant.                   ) December 20, 2023
    ***********************************************************
7                 TRANSCRIPT OF PHONE CONFERENCE
               BEFORE THE HONORABLE DUSTIN M. HOWELL
8                 UNITED STATES MAGISTRATE JUDGE

9   APPEARANCES:
    FOR THE GOVERNMENT:
10  Alan M. Buie
    Daniel D. Guess
11  Assistant U.S. Attorneys
    903 San Jacinto, Suite 334
12  Austin, Texas  78701
    (512)370-1242; alan.buie@usdoj.gov
13
    FOR THE DEFENDANT:
14  E.G. Morris, Esquire
    Law Office of E.G. Morris
15  505 W. 12th Street, Suite 206
    Austin, Texas  78701
16  (512)478-0758; egm@egmlaw.com

17

18

19

20  COURT RECORDER:   FTR GOLD

21  TRANSCRIBER:
    Angela M. Hailey, CSR, CRR, RPR, RMR
22  Official Court Reporter, U.S.D.C.
    262 West Nueva Street
23  San Antonio, Texas  78207
    Phone(210)244-5048;angela_hailey@txwd.uscourts.gov
24
    Proceedings reported by electronic sound recording, transcript
25  produced by computer-aided transcription.
```

1   (December 20, 2023 9:02 a.m.)
2                            *  *  *
3            THE COURT: Good morning. This is Judge Howell. Good
4   morning, everyone. Laura, if you'll call the case please.
5            COURTROOM DEPUTY CLERK: The Court calls the following
6   case for telephone conference, 1:23-CR-10-DAE, United States of
7   America versus Natin Paul.
8            MR. GUESS: Dan Guess and Alan Buie for the
9   government, Your Honor.
10           MR. MORRIS: Gerry Morris for the defendant, Natin
11  Paul.
12           THE COURT: Thank you and good morning. All right.
13  So this is a status conference we set a few months ago to check
14  in on status of discovery and get a progress check in terms of
15  our moving towards the July trial date that was currently set.
16  We had set a sort of interim status conference in October. I
17  just wanted to get a quick check in to check on progress and
18  I'll get back to that where we left things off. I know
19  circumstances on the ground changed and we'll get to all that
20  as well, but before we do, I want to address a quick
21  housekeeping matter. So we are all on the phone conference
22  together, Ms. Thompson is in my courtroom and has the recording
23  equipment going so we can record the hearing. The courtroom as
24  it currently stands, I don't think there's anyone in the
25  gallery. Can you confirm that, Ms. Thompson?

1     COURTROOM DEPUTY CLERK: That's correct, there's no
2  one else here, Your Honor.
3     THE COURT: Okay. As it currently stands, though, it
4  is open to the public and so the first question I want to pose
5  to counsel is whether there is any reason for the courtroom to
6  be sealed for the purpose of this hearing. Are we going to get
7  into anything that should not be open to the public?
8     MR. GUESS: Nothing from the government, Your Honor.
9     MR. MORRIS: Nothing from the defense side, Your
10 Honor.
11    THE COURT: Fair enough. And then I guess the second
12 question, I don't know that we have the answer to this now, but
13 ultimately if there's a transcript that's requested like we had
14 at that October hearing, I'll leave it -- I think the way it's
15 processed works is y'all reach out to the court reporter and
16 then she prepares the transcript and I believe, and correct me
17 if I'm wrong, y'all got more experience with this than I do,
18 but she prepares that transcript and then y'all let her know if
19 there's anything that needs to be sealed or redacted, correct?
20    MR. GUESS: Yes, sir.
21    MR. MORRIS: That's correct.
22    THE COURT: Okay. Doesn't sound like there's anything
23 we need to address with respect to any future transcript
24 requests and how those will be handled. Fair enough.
25    Moving into kind of the status conference, we left off

1   in middle of October.  It was Mr. Gerger was still on the case,
2   he and his associate and Ms. Morris *(sic)* have withdrawn.  And
3   Mr. Morris, you're the only attorney currently representing
4   Mr. Paul in the case, right?
5           MR. MORRIS:  I'm the only attorney who's made an
6   appearance and I can clarify that.
7           THE COURT:  Okay, well, let me kind of set the stage
8   real quick and we'll get into everything, but where we left off
9   I believe discovery was underway, the government produced some
10  tranches of higher level documents with the understanding that
11  once defense had a chance to review it that there might be more
12  targeted discovery requests in production and that as of mid
13  October I think that production had only kind of recently been
14  made in the format that was able to be uploaded into the
15  defendant's doc review system.  And as I remember it, then we
16  had that call.  At that point, the additional four counts had
17  not been added to the indictment.  So since then we've got a
18  superseding indictment with four additional counts which I
19  think has been contemplated mid October, but has not yet been
20  consummated.  And since that time, Mr. Gerger has been, as I
21  said, and Ms. Morris *(sic)* have withdrawn, leaving Mr. Morris as
22  the only current attorney who's made an appearance.  And then
23  we've also on the government side, Mr. Almonte withdrew and has
24  gone to private practice.  Best wishes to him in his next
25  chapter of his career.  And so I guess where there's a couple

1  of questions I've got in my mind for this hearing are sort of
2  what the current state of affairs is in light of the changes in
3  counsel on both sides of the "V", has discovery continued along
4  the schedule that was contemplated back in mid October or has
5  that stalled out?  And then ultimately I'd like your input on
6  where we stand with respect to that July trial date that is
7  still on the calendar and what y'all's thoughts are with
8  respect to that.
9           I can tell you the fact that Judge Ezra, he and I
10 didn't discuss this before this conference call, but I don't
11 think he's going to want to move -- I don't think he's going to
12 want to stay -- enter just a blanket stay or remove the trial
13 date from the calendar.  So under these circumstances, it might
14 be appropriate to pick a new trial date, whatever order
15 amending the scheduling order, if necessary, will need to
16 include a definite trial date, and so that is kind of what I am
17 hoping to discuss here.  I reckon you guys have probably spoken
18 some yourselves before this call, so I guess I'll turn it over
19 to you, Mr. Guess, and Mr. Buie and let the government kind of
20 chime in and then, Mr. Morris, I'll hear from you.
21          MR. BUIE:  Right.  Judge, Alan Buie here.  And so you
22 very accurately summarized where things stood seemed to be
23 discovery as of our last conversation and what would have been
24 this next stage which would have been for Mr. Gerger and his
25 firm to come back to us and say, well, let's have this

1  additional tranche of discovery that we think we need.  That
2  basically didn't ever happen because Mr. Gerger's firm let us
3  know that they were going to be withdrawing and it was this
4  kind of a matter of time.  When Mr. Gerger and I -- well, we
5  then subsequently spoke right after the superseding indictment
6  was returned and I asked him if they were planning to withdraw
7  whether they wanted to talk about discovery and get into the
8  sort of planning that and he said no, he thought it was better
9  to wait until the substitution when the new team would join and
10 then we would take that up.  Because some time has passed and
11 we haven't been able to speak with the attorneys who are going
12 to be replacing Mr. Gerger's firm yet, we still haven't had
13 that kind of a meeting, not that we couldn't have had it with
14 Mr. Morris, but you know, I think everybody, and Mr. Morris can
15 correct me if I have this wrong, but I think everyone has
16 understood that Mr. Morris was not going to be, like, sole
17 counsel for the defense on this.  And so basically what we've
18 done, Mr. Guess and I did speak with Mr. Morris a couple weeks
19 ago to make sure that, you know, our understanding was correct
20 and there was going to be additional attorneys joining the
21 defense team, we decided to go ahead and make an initial
22 discovery production related to the new charges, counts one
23 through four of the superseding indictment just so that we
24 could be moving forward and then it's kind of like the very
25 first production that we did related to the original

1   indictment, it's just like, you know, interview memos and grand
2   jury testimony and records that were produced to us by the
3   government's most critical witnesses and just things that are
4   so directly relevant to new charges that, like, this stuff is
5   definitely going to get turned over, that we went ahead and
6   delivered that initial tranche of discovery this week and we're
7   preparing a second discovery production which is going to
8   consist mainly of the government's forensic accounting analysis
9   that goes -- that went into the first four counts of the
10  superseding indictment which is related to the wire fraud
11  scheme and that's kind of a substantial production.  It's work
12  product, it's also bank records, other things that really to
13  make sense of it it's going to be logical I think to have a
14  meeting and talk about that when we turn it over.  So I guess
15  the long and short is that what we were anticipating doing with
16  Mr. Gerger's firm hasn't happened yet and I guess we'll wait
17  and see whether the new attorneys that are going to join the
18  defense team want to proceed along those same lines and we are
19  making discovery production currently related to the new
20  charges so that we get a good start on that.  But again, I
21  would anticipate that they're, whoever they are, if they're
22  willing to do it, having a similar conversation to what we had
23  previously with Mr. Gerger and Mr. Morris just talking about
24  what does the government have, what is the case about and
25  what's going to be the most beneficial way for us to proceed

1  discovery-wise to meet the needs of the defense team, so I'm
2  kind of hoping we'll have that sort of conversation once the
3  defense team is completely filled out and then we'll know more
4  detail about how things are going to go.  That's kind of where
5  they are now discovery-wise.
6              MR. MORRIS:  First thing -- sorry, go ahead.
7              THE COURT:  No, yes, go ahead, Mr. Morris.
8              MR. MORRIS:  First thing is I think you said a while
9  ago that Mr. Gerger and Ms. Morris had withdrawn.  It's Ms. Orr
10 that withdrew.
11             THE COURT:  Sorry about that.
12             MR. MORRIS:  My wife has not made an appearance in the
13 case yet.
14             First of all, Mr. Buie is quite right that my role in
15 this case and my engagement in this case is to serve as local
16 counsel, but not just be another pretty face, I'm definitely
17 involved in the defense, but I made it clear to Mr. Paul that I
18 cannot serve as sole counsel in this case consistent with the
19 Rules of Disciplinary Procedure because I don't have the
20 infrastructure to process the amount of discovery that we're
21 looking at.  So long and short of it is there will be
22 additional counsel and I believe that is going to happen by the
23 end of this week or possibly next week.  The counsel will be
24 from Williams and Connelly in Washington, D.C. whom I've met
25 with and talked extensively with about the case and they have

1    begun work on the case, so they appear to be very much
2    intending to stay involved.  And I've stressed to everybody
3    involved that this needs to happen and happen quickly because
4    we don't have a blank check here as far as trial dates and so
5    that's the understanding we're all working under that it will
6    happen soon.  Yes, they are aware that they're going to need to
7    meet with Mr. Buie and others and get up to speed on the
8    discovery and talk to the U.S. Attorney's Office about the
9    format that discovery will be delivered in and, you know, do
10   all the things they need to do to get ready.  I've talked to
11   them about of course the trial date.  They're aware of the
12   superseding indictment which was issued November 7, and their
13   suggestion is going to be that the trial date be continued to
14   some date in first quarter of 2015*(sic)*.  And their thinking on
15   that is, first of all, just examination of the case, they think
16   it will take that much time to get ready, but they think they
17   can get ready by that period of time.  But that would be -- if
18   you look at the initial trial date, you look at the length of
19   time between the original indictment and that trial date, an
20   equal length of time between superseding indictment and a trial
21   date would be first quarter of 2015*(sic)*.  And I don't know if
22   the Court has looked at the superseding indictment, but there
23   are different types of charges for what I'm going to call the
24   standard fraud, wire fraud -- excuse me, theft, wire fraud as
25   opposed to the ten, 14 counts which were a lot narrower in

1   their scope.  So there's going to be a lot of stuff to go
2   through that's going to be relevant to these different charges,
3   a whole host of key witnesses to track down and try to
4   interview, so there's a lot of work to be done.  We've talked
5   about the plan for doing it, so they're not starting from a
6   flatfooted start when they come into the case.  Did I cover
7   everything that the Court was interested in?
8           THE COURT:  Yes.  I think, though, Mr. Buie, what do
9   you think about the recommendation of a date pushing the trial
10  out to first quarter of 2025?
11          MR. BUIE:  So I talked to Mr. Morris earlier today
12  about that and as I told him, you know, the timing is not as
13  crucial for the government perhaps as it is for the defense.
14  You know, we have been working on this a long time and so our
15  main position on timing is, you know, just that we're going to
16  work with the defense and the Court to, you know, move things
17  forward as quickly as we can.  I think we haven't -- the timing
18  is something that we will probably, A, want to discuss with our
19  management, our executive level management because this is a
20  significant case for the office, and then I'm sure we'll be
21  discussing it with Mr. Morris and Williams and Connelly.  We
22  may end up wanting to try to arrive at an agreement for a trial
23  date sooner than 2025, but again, I mean, it's all very new and
24  we don't have really a definite position on it other than
25  obviously we're going to do everything we can to move the case

1  forward, cooperate with the defense and see what the Court
2  tells us to do, so it may be that we're going to want it to be
3  sooner than 2025, but we kind of need to discuss that
4  internally and also talk about it with -- when we have our
5  discovery meeting before we have a real strong position.  I
6  don't want to say right now right off the cuff exactly what our
7  position would be on that, but those are kind of at least the
8  broad outlines of my thoughts on it.
9              MR. MORRIS:  Your Honor.
10             THE COURT:  Go ahead.
11             MR. MORRIS:  One thing I need to mention as kind of a
12 I guess an elephant in the room is there is another
13 investigation underway that involves Mr. Paul that's being done
14 by the Department of Justice and we have no idea of what the
15 outcome of that's going to be and what the timeline is going to
16 be because they won't talk to us.  And I think Mr. Buie may be
17 in the same position on that, it's kind of a wall that's been
18 constructed between that investigation and this one.  So there
19 may be other events that happen that affect what we're talking
20 about and I bring that up for another reason that just to let
21 you know that there's still another chapter to be written here,
22 and I don't know if Mr. Paul is going to be charged or what.  I
23 just have no idea.
24             MR. BUIE:  Yeah, and Mr. Morris is right, we don't
25 know either.  That's a matter that we don't participate in and

1  don't really have eyes on, so I am not -- I would echo what
2  Mr. Morris said that that investigation is out there and if it
3  were to result in charges against Mr. Paul, then I think that
4  would definitely alter the landscape, but we're not in any
5  position here to know whether that is a significant possibility
6  or not, we have no idea.
7           THE COURT:  Right.  I think for our purposes today
8  that's maybe too much of an unknown then to try and account for
9  it.  Obviously, things change, as they have already in this
10 case, we just sort of adjust as we go.
11          MR. BUIE:  Right.  If I may just add a couple more
12 observations about the real big picture.  So without -- never
13 say never, but at this point, Mr. Guess and I view the pending
14 superseding indictment as being all of the charges that our
15 office is likely to bring, so I can't absolutely promise
16 there's no, you know, nothing could come up that would lead to
17 additional charges, but for the Court's information what we're
18 working on now is not really investigating additional charges
19 and a second superseding indictment.  That's not our focus.
20 We're working on discovery and eventually, you know, trial
21 preparation.  So at this point, I'll just say I would be
22 surprised if we ended up superseding the indictment again and
23 adding more charges.  I think the 12 counts that are pending is
24 what the Court should expect to go to trial, you know, assuming
25 there's no motion practice or whatever else the case may be.

1   And when we talked before, I can't remember if we got into
2   talking about the length of the trial.  I think we did.  With
3   the original eight counts I was estimating about 15, one/five,
4   hours of direct examination without trying to estimate
5   cross-examination or recross and without trying to estimate
6   what the government's rebuttal case might look like just
7   because, you know, that's just really hard to handicap when you
8   don't know exactly what the defense is going to be and all of
9   that.  At that point I was thinking a dozen witnesses, maybe 15
10  hours of direct exam as far as the government's case in chief.
11  Now with the additional scheme that we've introduced in the
12  first four counts, I'm now thinking more in terms of probably
13  two dozen witnesses roughly in the government's case in chief
14  and more like 25, 26 hours of direct exam of -- and as I sketch
15  it out, most of these witnesses, just to provide a little bit
16  more color, most of these witnesses I'm thinking we put on and
17  pass the witness in no more than an hour.  And then we have a
18  couple of witnesses that, you know, one witness who was
19  involved in several transactions that are kind of complicated,
20  he may need to get two hours, and then our FBI forensic
21  accountant who has a lot of materials to put in, that's more of
22  a three or four-hour kind of project putting him on.  So that's
23  where I'm getting to those numbers of a couple dozen witnesses,
24  25, 26 hours of direct exam and then depending on what happens
25  beyond that and you can kind of extrapolate that throughout the

1  length of trial.  If the combined cross and redirect was double
2  the length of the initial direct exam, then you're looking at
3  maybe 50, five/zero, hours with time with the witness on the
4  stand and just however long that takes.  That's probably going
5  to be a couple of weeks just for the government's case in chief
6  I think, and so defense case, however much longer, but that's
7  about the best I can do at this point as far as estimating how
8  big a block of time we're going to need on the Court's calendar
9  for trial.  I think we've got like two weeks probably for the
10 government's case in chief if you consider jury selection and
11 everything else that has to happen before you even kick off
12 evidence, and then probably the government resting sometime
13 before the end of the second week, you know, with the charge.
14         MR. MORRIS:  I have no idea how long defense case
15 would take at this point.  We're mostly reactive to the
16 discovery we get to the government's case.  We don't know
17 anything yet.
18         THE COURT:  That's helpful. All right. Anything else
19 that we should discuss while we're all here together on this
20 call?
21         MR. BUIE:  Not from the government, Judge.  Unless
22 there are questions, we're happy to respond, but I think what
23 we're looking at is when Williams and Connelly enters their
24 appearance or enter perhaps that we'll be convening with them
25 and Mr. Morris as soon as possible to get to work on discovery

1  and whatever else is needed, and I'm sure we'll be talking to
2  them about timing as well.
3          MR. MORRIS:  I'll tell them that they need to file a
4  formal motion for continuance so that there will be something
5  before the Court to rule upon and maybe additional things,
6  factors that we'll put into the motion that will guide the
7  Court on trial date, but we'll follow it up with a -- follow
8  this conversation up with a formal motion.
9          THE COURT:  That makes the most sense in terms of next
10 steps from this call is exactly what you proposed, Mr. Morris.
11 Assuming that Williams and Connelly enters their appearance
12 this week or next and we've got holidays happening in between
13 and I assume the huddle between those lawyers and government
14 lawyers takes place sometime in mid January, am I accurate as a
15 safe guess at this point?
16         MR. MORRIS:  That's a safe guess, I think.
17         THE COURT:  I suspect after that meeting, you'll have
18 what you need to make a motion for continuance and kind of tee
19 that issue up so that I suspect Judge Ezra will refer that to
20 me to handle, that you have a more detailed plan and kind of
21 conferring you guys can do to make a proposal on a practical
22 way to move forward that will facilitate the conversation we
23 have in the hearing on the motion for continuance.  I'll leave
24 that to y'all to get that going and so I'll just be on the
25 lookout for that motion.  But I take it, then, Mr. Morris, that

1   you anticipate that a motion to continue along those lines
2   could probably be filed by the end of January?
3           MR. MORRIS:  I would hope so, Your Honor.  If you
4   order that, it certainly will happen, but I'd rather keep it a
5   little fluid because I-- it should be done by end of January.
6           THE COURT:  Mr. Buie, any comment on that?
7           MR. BUIE:  Not really, Judge, I don't have anything to
8   add.
9           THE COURT:  I think rather than ordering it at this
10  point, I'll just add a note to my calendar that keep an eye out
11  for that motion in that last week of January and if it hasn't
12  come through, then maybe I'll ping y'all or prod or at least
13  see if we can't get on another call to see where we are after
14  that.  Sound like a plan?
15          MR. BUIE:  Sounds good, Judge.
16          MR. MORRIS:  Yes.
17          THE COURT:  Okay.  Well, if there's not anything else
18  for us to discuss, correct?
19          MR. BUIE:  Not from the government.
20          MR. MORRIS:  Not from the defense.
21          THE COURT:  Then I'll share this information with
22  Judge Ezra and we'll watch for that motion next month and then
23  we'll proceed from there.  I appreciate all of everyone's hard
24  work in working this case up and hope all of you have a happy
25  and festive holiday season.

1       MR. MORRIS:  Thank you, Your Honor, same to you.

2       MR. BUIE:  Thank you, Judge.

3       *(9:32 a.m.)*

4                           *   *   *

25                      *   *   *   *   *

1  UNITED STATES DISTRICT COURT
2  WESTERN DISTRICT OF TEXAS
3
4       I certify that the foregoing is a correct transcript from
5  the record of proceedings in the above-entitled matter.  I
6  further certify that the transcript fees and format comply with
7  those prescribed by the Court and the Judicial Conference of
8  the United States.
9
10 Date signed:  February 13, 2024
11
12 /s/ Angela M. Hailey
   _____
13 Angela M. Hailey, CSR, CRR, RPR, RMR
   Official Court Reporter
14 262 West Nueva Street
   San Antonio, Texas  78207
15 (210)244-5048
16
17
18
19
20
21
22
23
24
25